Good morning, ladies and gentlemen, and welcome to our court. At the outset, Judge Newsom and I wanted to welcome, introduce to you, and thank for his efforts, our visiting judge sitting with us this week. Judge Moore has sat for many years with great distinction on the district court in the Southern District of Georgia. He was appointed by President Clinton in 1994 and has served, as I said, with honor and distinction since then. He has been the chief judge of the district court there as well. We're delighted to have him here to sit with us and bring a world of experience to our undertaking. Second, I wanted just to make two other brief observations before we began. The first is, as you proceed with your arguments, you can safely assume that we've had a chance to review the briefs, the record itself. So feel free, really, to go right to the heart of the argument in the time you have. And third, for those of you who have not appeared in our court before, you'll note that there's a lighting system and a clock there. And the lighting system has green, which means go. Yellow is a two-minute warning. And the red light means that your time is up. So when you see the red light come on, if you could bring your remarks to a conclusion, we'd be much appreciative. We're not asking you to stop in the middle of a sentence or something like that. But if you could bring it to a conclusion, we'd be much appreciative. With that, we will proceed with our first case this morning, which is Bing Good morning, Honorable Judges. My name is Yi-Ling Poon. I'm the attorney for the petitioner, Mr. Lin. May I please the Court? This case is about A-Lin's right to a constitutional due process. The BIA acknowledged that Mr. Lin came to the United States, in Hawaii, and was paroled into the United States. The charging document, charging him as EWI, is patently incorrect. A proceeding premised on a critical factual error with immense legal consequences is an improvidently commenced proceeding. The proceeding denied Lin's due process because it deprived him of important immigration benefits, the right to a justice status to become a permanent resident in the United States. It follows that Lin's abstential order of this proceeding is patently invalid. Because the IG's order is patently invalid, the time and number limitations governing the general motion to open should not apply to Lin's proceedings at all. Lin does not know if the I-122 has been filed with the Court or not. If it indeed has not been filed with the Court, we would like to concede that the IG has the discretion to place him in removal proceedings. However, whether he's in exclusion or in removal proceedings, it does not matter. The issue remains the same. Can I ask you just a factual question? Yes. Do I have it right that on the 93 asylum application, Mr. Lin filled in EWI entry without inspection and then didn't provide the initial alien registration number? And if so, why is that? Well, he was not represented by counsel in our motion to reopen. We make it very clear that he was represented by the, what we call, trust agency, the non-lawyer, the practice law, and they filled out anything. Lin gave him the correct name, correct day of entry, but they put out that, I guess, these people don't know the legal distinction between what EWI is or whether he's a right paroled. And so I hope this answers your question. And was he still represented by one of these non-lawyer travel agents when, I guess, in following the 1998 IJ's decision, there was no appeal, and then following the 2014 IJ's decision, there was no appeal? No. He was represented by the non-lawyer in the 1998 motion to reopen, which alleged that Mr. Lin went to court, had the asylum denied, and then it was administratively closed. But none of that is true. That's made up. He was presented by me in the 2014 motion to reopen. And the reason why it was not appealed, because we want to submit new evidence to prove that he is indeed the same person by hiring a forensic expert to examine the two fingerprints, the one he was taking at the time of arrival and the one we took at the police department. And so why was it that the, this gets to another question I had, why is it that the fingerprint evidence was not available to you in the 2014 proceeding? Your Honor, we don't have the two fingerprints. He took fingerprint at the time arrival and he took fingerprints again at the time he applied for asylum. We don't have those files. We have the assumption the government has everything in the possession that could verify the identity. He make the representation that he was indeed the same person. We give him the Chinese name that appear on the end, on the documents, and give them the dictionary to show that this Chinese name pertains to the same person. And we assume the government, there was no adverse credibility finding to say that was not true. The government did not dispute anything. So we did not know that the judge would not, would have this issue about his identity at all. And since everything is in government's possession, and they easily could verify that these two are the same person. And we were forced to hire expert to basically collaborate a point that the government already should have known if they had just do a little bit of due diligence by searching the files. And that's the reason why it's unavailable at that time because there's no need to do that. Let me ask you a procedural question if I can. You raised several grounds, constitutional claims. Were those claims perfected before the Board of Immigration Appeals? Yeah, we did allege abuse of discretion. That's not, I understand that you alleged abuse of discretion. Right. But your claim is more precise and specific here. You raise a variety of claims, including among others that the Fifth Amendment Due Process Clause was violated. Yes. The process that was employed here. Did you urge that basis before the Board of Immigration Appeals? Did you say our Fifth Amendment Due Process rights were violated because X, Y, and Z? And if the answer is yes, can you point me to where in the record I would find that? We did not call it in that term particular. We did say that the proceeding commenced in such a way was actually denied the client of the right to present the evidence. The reason why we did not perfect the issue with the BIA because BIA does not have authority to decide on constitutional issues. Well, they have the authority to decide some constitutional questions perhaps and not others. And that's why I'm raising the question with you. So we did not, according, accept terms. Let me ask a second procedural question. Do we have jurisdiction to entertain your challenge to the 1997 removal order? The reason I raise the question is that you never took a timely appeal as best I can tell from the initial removal order, nor from the first or second motion to reopen which were denied. You did not perfect any appellate process. And now on the third iteration, you want us to go back, if I have it right, and reconsider the wisdom of what they did on round one and two. Do we have the power to do that? I believe so, Your Honor. Because the whole proceeding was premised on a very wrong factual error which has significant legal consequences. As a matter of law, I would believe that the whole order of extension order was invalid. And because of that, the, and also the first motion to reopen was not done by a lawyer, that should not even have been counted to begin with. Right. But the reason I raise it is, as I looked at our case law, we've got a fair body of law that says something like this. We said this in a case called Gaxman versus the Attorney General. We said, and I quote, because we conclude that the earlier order of removal entered by the board was final, that the petitioner declined to pursue a timely petition for his review, and in the second appeal to the board failed to exhaust his earlier arguments, we must conclude and hold that we lack jurisdiction to review the earlier order. And we've got a number of cases that basically say that if you had an opportunity to appeal from something the BIA did, and you didn't on round one, and you didn't on round two, and you didn't from the initial order of removal, then you procedurally cannot come back to the Court of Appeals and say, we'd like you to revisit that other stuff as well as the third order of removal, which I think is properly before us. You follow what I'm getting at with my question? I think the 11th Circuit has decided in rules, it was tertios, R-U-I-Z-T-U-R-C-I-O-S, is 717F3847. This is a case actually has three motions to reopen file, and the court make it clear here that said that both the times and number limitations on non-jurisdictional claims processing rules are all subject to equitable tolling. And I believe that under the situation here where there's an egregious circumstances presented in this case, where the abstention order was premised on an invalid notice to appear, and where clearly he did not receive notice, clearly that he had no opportunity to even tell the court why he did not show up in court, whether he has been informed about the fact that he had to provide change of address. All these issues should have been presented if he was given the opportunity to present the case. I believe that this case actually govern is much more govern our case here than the other cases. Let me ask you just one final question, and we're not going to eat. We'll give you your five minutes for rebuttals, and you just take your time. One of the arguments you make with regard to the third issue with the third iteration, which I think is properly before this court, is you say that the Board of Immigration Appeals decision did not offer, quote, I'm not sure I understand why, because when I looked at the BIA order, they offered the following rationale. Maybe it's right, maybe it's wrong, but I don't have any difficulty as an appellate court sitting in review understanding what they did and why. They say, and I quote, quote, the immigration judge's order of removal was entered in absentia on December the 23rd, 1997. On February 8th, 2016, the respondent filed his third motion to reopen. The immigration judge correctly determined that the motion to reopen was untimely and numerically barred under the general motion to reopen statutes and regulations, and then they cite to the INA and to the regs. And then they offer a third reason. They say, not only is the respondent's motion numerically barred as it was the third motion to reopen he had filed, but it was filed more than 180 days after the immigration judge's decision, ordering the respondent removed in absentia, citing to the appropriate CFR. And then they go on and offer still an additional rationale as I read it. We agree, they write, with the immigration judge's determination that the respondent's additional arguments in his third motion to reopen were not new or previously unavailable. So as I read the order, they've offered three reasons. Maybe they're good reasons, maybe they're bad reasons, but I know what the rationale was. One, the motion to reopen was untimely, wasn't filed within 180 days. Two, it was numerically barred under the statute. And three, the motion to reopen, there was nothing new or previously unavailable on the third iteration that wasn't available on rounds one and two. Can I exercise appellate review and understand why they did what they did? Your Honor, the main argument we have in our motion to reopen is two. One, he never received notice. The second is that the whole proceeding was improperly commenced. And I believe that judge nor BIA ever, ever addressed our issue of legal notice and also specifically the fact that the whole proceeding was premised on a major legal error, which is that he was not EWI. And under the circumstances, we argue that maybe the time and unnumbered limitation should not apply. You cite in support of that theory a case of ours called Secretary of the Attorney General. Right? That's the case you cite in support of the argument that they didn't consider the crux of your argument. I see nothing in SEC that announces a rule that the BIA must address what you characterize as the crux of every claim. And second, SEC looked different to me because it was a direct appeal from an order of removal where the argument against removal needed to be addressed. It was not as here an appeal from a motion to reopen a subject which faces different and higher procedural hurdles. Am I missing something here? No, I believe that no court has ever actually decided on a case with the out facts that say that when some proceeding was commenced with a major factual error that had significant legal consequences, whether the whole number and time limitation apply. And the case is cited by the government to justify the fact that the Attorney General has absolute discretion to commence proceeding. None of the cases dealt with the fact that there was a factually incorrect. Even the Chang case cited by the government, it said that the court said that this is an exercise case. The court can institute removal proceeding instead of exclusion proceeding. However, they elect the alien correctly that he's arriving alien. As arriving alien, the alien could also adjust status in the United States. His right has not been trampled. The right has not been deprived. So at this point, I have not seen any case law that shows that under the circumstances like Mr. Lin, that whether the number and the time should apply to a very invalid order. And I would ask the court maybe to decide on this issue. Thank you so much. You've reserved five minutes for your rebuttal. Yes, thank you. Good morning. Good morning. May it please the court, Victoria Braga, appearing on behalf of the Attorney General. The court should deny the petition for review in part because the agency did not abuse its discretion in denying the motion to reopen as time barred, number barred, and is not presenting previously unavailable arguments or evidence. The court should dismiss the petition for review in part because the petitioner's challenge to the agency's decision not to sua sponte reopen is an issue over which this court lacks jurisdiction. Petitioner does not raise any legal or constitutional issue to restore jurisdiction. Considering first the reasons the court should deny the petition for review, this is the petitioner's third motion to reopen. Can I ask you just a factual question, sort of rewinding the tape to 97? What happened between 1997 when he, when Mr. Lynn is ordered removed and 2014? Like what was going on during that time? Was there an effort to remove him or no? And if not, why not? I just wonder what happened in those intervening nearly 20 years? Well, Mr. Lynn was ordered removed in absentia in December of 1997. As the record establishes, the North Carolina address that he provided when he filed his asylum application, he was no longer receiving mail there. So his notice to appear and also the order of removal, I think, was returned as undeliverable. Um, he did file a motion to reopen in 1998. That's the motion to reopen that does not track the record factually. But in that motion to reopen, he does claim that he was living in New York and he provided a New York address. When the motion to reopen denial was mailed to that address, it was returned as undeliverable. So in the period between 1997 and 1998, until he came forward and said that he was living in New York, the government was not sure where he was. And then when the mail that was sent to the address, the New York address that he provided, the government was returned. The government, again, did not know where he was and did not, could not know where he was until 2014 when he came forward and filed his second motion to reopen. So it's only really since 2014 that the government has had an idea of his whereabouts, which in, in which case the government would be able to better facilitate removal based on the 1997 removal order. Got it. So he was just sort of off the radar for the period between 98 and 2014. And when he resurfaced, you guys. He was. And between 2014 and now, he's had multiple, well, at least two motions to reopen pending. The immigration judge, in denying his second motion to reopen, as your honor said, which is not properly before the court, does make a reference to the fact that between 1997 and when he was ordered removed, 1997, when he was ordered removed in 2014, when he came forward, he was, I think the immigration judge calls him a fugitive from justice. Kind of indicating that the government did not know where he was during that period. So Mr. So the petitioner's motion to reopen is number barred in that it's his third motion to reopen. It is also time barred. This motion to reopen his third was filed in 2016. That is more than 18 years after he was ordered removed. Normally there's a 90 day deadline that applies to motions to reopen. However, there are exceptions to that deadline. None of the exceptions apply in Mr. Lynn's case. One exception provides for 180 days to reopen an in absentia order of removal. If the alien proves that exceptional circumstances present prevented his appearance at the hearing at which he was ordered removed, Mr. Lynn has never claimed this to apply. And even if he did, his motion to reopen was filed well outside also the 180 day deadline. There's also an exception to the time bar applicable to motions to reopen if an alien who's removed in absentia as the petitioner claimed that they did not receive notice of their proceeding. It's not until the petitioner is before this court that he makes any sort of legal challenge to the notice that he was provided. He does in his second and then also this motion to reopen reference facts related to the notice that he was given. However, he never makes a legal argument about why this notice was insufficient. As this court has said in a 2011 unpublished case, Lira Carrillo, which is cited in our brief, it's not enough to simply reiterate facts to the agency. The agency in order to make a reasoned decision needs to be presented with a legal argument. And Mr. Lynn has not done that with regard to notice. So it would be improper for this court to assume jurisdiction over the notice issue as the agency hasn't been given a chance to address any sort of legal arguments related to notice. What's the government's current position with respect to the fact whether Mr. Lynn was or was not paroled into the United States in 1991? Your opponent says this whole proceeding is based on a fundamental factual error. And what's the government's position as to that fact currently? Well, there has never been a finding by the agency that Mr. Lynn is the individual who entered into the United States in 1991. The board does in affirming the immigration judge's decision reiterate the facts as stated by Mr. Lynn. However, the board does not have fact finding capabilities. So the board is unable to find that he is the individual that entered the United However, even if he is the individual that was issued the form I-122 in 1991, there's no evidence in the record that this form was ever filed in immigration court. And the regulations are clear that exclusion proceedings only commence when such a form is filed in immigration court. So to the extent that petitioner is the same person who entered in 1991, he was never placed into removal proceedings. And then as petitioner has also conceded today, having not been placed in exclusion proceedings, it does lie solely within the discretion of the Department of Homeland Security to place him into removal proceedings in 1997. The petitioner did say during argument that no court has ever addressed facts similar to this, but there is a case cited in our brief. It's an unpublished case from the Third Circuit. The name of the case is also Lynn. It was decided in 2014, and the facts are very similar. The petitioner in that case entered the United States and was issued a form I-122. That form was never filed in immigration court. The petitioner was later placed into removal proceedings and ordered removed in absentia. The petitioner later filed a motion to reopen and challenged that he should be in exclusion and not removal proceedings. And the Third Circuit provided that they did not have jurisdiction over this issue because the court doesn't have jurisdiction under 8 U.S.C. 1252G to consider the agency's decision to commence proceedings. And the court also said that the petitioner's recourse against challenging the propriety of her proceedings was to appear at her initial hearing and challenge the charge of removability as applied to her and the commencement of her proceedings. She failed to do that, and similarly in this case, the petitioner has failed to do that and he's failed to provide any excuse for why he did not appear at the 1997 hearing. Counsel, let me ask you a question, please. This court has been clear in the past that it lacks jurisdiction to review the Board of Immigration denials of motions that are sua sponte reopened in removal proceedings. There's ample authority for that. However, there seems to be some authority that suggests that the court retains jurisdiction to certain allegations of constitutional violations. And there's a case out of this circuit in 2017 called El Abani, if that's the correct pronunciation, versus the Attorney General. Where is there a contention in this case of any colorable constitutional violation over which this court might retain jurisdiction? Well, the petitioner argues that she's raising a due process claim regarding the propriety of commencement of removal proceedings. However, the government argues that this is not a colorable constitutional claim. She's simply challenging the Department of Homeland Security's placement of the petitioner into removal proceedings, which is an issue over which the court does not have jurisdiction. So there is no colorable constitutional claim or question of law over which the court has jurisdiction. The petitioner is simply asking the court to review the Board of Immigration Appeals' decision not to reopen the case sua sponte. And as Your Honor said, the court does not have jurisdiction over that issue. Do you say that is unless there is some due process constitutional violation? Yes, we do concede that if there is a constitutional question or legal issue raised, the court does have jurisdiction. However, the petitioner, in making her challenges to the denial of the motion to reopen, does not raise any constitutional question or legal issue over which the court has jurisdiction. What I'd like to have you tell me is why we have no jurisdiction over the constitutional claims that he makes. Is it because he failed to exhaust? And if he had exhausted, the BIA had the authority to decide those procedural issues? I'm not sure I understand what you're saying. If you could tell me why we have no jurisdiction over the Fifth Amendment due process claim that he's asserting. Well, to the extent you may, you have jurisdiction over due process claims, our argument is that this is not a meritorious constitutional claim. Well, that's not saying we don't have jurisdiction. That's just saying going to the merits, he loses. Yes. But I understood the argument to be we don't have the power to entertain the matter in the first place. And I thought the reason we lacked the power was that he had failed to exhaust those claims which fell within the ken and authority of the BIA. Did I misapprehend that? No. The petitioner's constitutional claims, to the extent that he's making them now and categorizing them as due process claims, were not raised to the Board of Immigration. Therefore, he failed to exhaust and he was obliged to exhaust that before the BIA. Is that the reason? Have I misunderstood that? No, you haven't misunderstood that. Those claims were not raised to the Board of Immigration Appeals. However, we do also argue that before you get to the alternate argument, I want to make sure I understand this argument. This argument is the failure to exhaust a constitutional claim before an administrative forum that had the authority to decide that particular constitutional claim. Correct? The Board of Immigration Appeals would have been able to issue a decision on whether or not the petitioner's due process rights had been violated by the commencement of his proceedings. Right. And he never perfected that. And therefore, we just don't have the power to hear it without first giving them the shot to look at it ab initio. Right? Yes. And the Board, with regard to those claims, as Your Honor said in its decision, did say that none of the arguments made were previously unavailable. So to the extent, additionally, to the extent that the petitioner is making constitutional claims, they're based on events that happened in 1991 and in 1997, there's no evidence in the record that these claims were previously unavailable to the petitioner, especially when she filed her motion or he filed his motion to reopen in 2014. And just so I'm clear, I'm sure you know this a lot better than I do, are there different kinds of constitutional claims being raised here? And do some of those fit within the BIA's jurisdiction to adjudicate and some don't? I mean, it seems like there's a, you know, there might be a sort of a subclaim here about the agency not following its own procedures. There might be a subclaim here about the, you know, the fact that the proceeding is based on a false fact. There might be a subclaim here about, you know, him not receiving notice. And are those all in the same bucket in the sense that the BIA has jurisdiction and the failure to exhaust them there precludes us or some of them just sort of outside the BIA's bucket? Well, I think all of those claims, all of the claims the petitioner is raising and calling legal or constitutional claims, the petitioner is categorizing as due process claims. So the BIA, to the extent that it can review the agency's actions and the agency's actions with regard specifically to this petitioner, does have jurisdiction to consider whether or not he was afforded due process. Got it. Put differently, the arguments that are made, if I have it right, are procedural errors that she claims constitute procedural due process violations in violation of the Fifth Amendment. But because the nature of the alleged violations were the kinds of procedural issues falling within the ken of the BIA, the exhaustion requirement requires her to have raised it first with the BIA. Do I have that right? Yes, petitioner should have raised her due process arguments with the Board of Immigration Appeals. And aside from claiming that her proceedings were not properly commenced, she failed to exhaust any legal argument with regard to due process before the BIA. Thank you. Thank you. Counsel, you reserve five minutes for rebuttal. Yes, I want to make a few points. First, about the Lin case in the Third Circuit talked about by the government, this case is distinguished from our case because that Lin over there, the court said that he deliberately refused to show up to contest his charges. So he was given the opportunity, but he did not show up. So because of that, he was not entitled to another opportunity to do that. Whereas in my client's case, he never got the opportunity to even contest the charges against him. So that's a big distinction. The second thing about issue of exhaustion, this court— Counsel, let me interrupt you a moment. Yes. Doesn't your client have to stand by the fact that it was his actions where he removed himself, where he moved from location to location, and the government did not know where he was? Doesn't he have to stand by that? It wasn't the government's fault that they didn't know where he was. The record we have did not indicate anything that he was notified of the need to submit change of And the whole time he was basically represented by people who thought he was their lawyer. So there's nothing in the record to show that he was advised of the need to provide the court or the INS of the need to change address. And in fact, the court denoted, sent to him on July 18 was the date they did not even file the paper to the court yet. So the court really had no interaction with Lynn at all throughout the whole time until the motion. You seem to ignore the timeliness issue in your pleadings in this case. And you make a due process argument that due process requires that proceedings improvidently commenced may be terminated at any time. That's a due process argument that you make. What case law, if any, do you have that supports that argument? There's no case. I don't think there's any court has decided on this issue at all on the federal court level. What we are making is not just the term about improvidently commenced. What we are concerned about is that the wrong charge of this person when this person is an arriving alien and was being charged as EWI. And the government did not never dispute the fact that Lynn came in through Hawaii and basically is right now will be an applicant for admission. And the government never, never dispute that fact. So even though, and the BIA took our allegation, our assertion at face value, because the government never wrote any reply brief anyway to our argument. As to the issue, extortion issue, this court in January versus U.S. Attorney General, they said that in order to preserve the issue, we don't have a petitioner that doesn't have to articulate a specific argument. And all it needs is to provide sufficient information to enable the BIA to review and correct any errors below. They also said the exertion is not a stringent argument. Simply put, petitioner must have previously argued the court issue below on appeal before the BIA, does not require us to give a legal, precise legal terminology or provide well-developed argument to support this claim. And this is an 11th Circuit case, this court. And we already argued he never received notice. We already argued that he was placed in the, made the wrong charge, that he's not a EWI. And because those are two major issues. And throughout the whole time, the BIA never, or the judge never, never, never addressed whether he was correctly charged. And even if we want to concede that the agency had the discretion to place him in removal proceedings. Just briefly, with respect to the argument that he never received notice, wasn't your client's testimony over the years sort of all over the place about this? He said he did attend the hearing. Then he said he didn't get notice because his employer failed to tell him. Then he said he didn't get notice because he had moved. I'm trying to figure out what the NTA was sent to the alien on July 18. That was returned unclaimed. And the government, actually, the judge conceded he never received notice. The only claim the judge is talking about is that, well, he is the one that did not provide us with the correct notice. So there was no issue at all. He never received notice at all. And as I said it before, the first motion to reopen was prepared by a non-lawyer, who made all kinds of crazy assurances that he had to appear in court, that he was denied asylum. None of that is true. Even the government's response to the first motion to reopen also have incorrect truth there. It said that the alien appeared on July 23rd, 1997, and was personally served with notice. Nothing of that happened. July 23rd of 1997 was the date that the NTA was filed with the court. Not the date he ever appeared at all. So this whole thing is a mess in the sense of, like, the agency made all the incorrect assertions. The government made the incorrect assertions. And so you had to really comb through every line, every page to find out what's going on. And how do we expect an alien to— Counsel, if you could bring your remarks to a conclusion, please.  Thank you very much. Thank you both. And we'll proceed with the next case, National Union Fire v. American Guarantee and liability.